IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :     CRIMINAL ACTION

        v.                        :

WILLIAM S. DAHL                   :     NO. 14-382

MEMORANDUM

Bartle, J.                                December 3, 2014

        The superseding indictment charges defendant William
S. Dahl with three counts of the use of an interstate facility
to entice an individual defendant believed to be a minor to
engage in sexual activity (18 U.S.C. § 2422(b)), one count of
attempted enticement of an individual defendant believed to be
a minor to travel in interstate commerce to engage in sexual
activity (18 U.S.C. § 2422(a)), one count of transfer of
obscene material to an individual defendant believed to be a
minor (18 U.S.C. § 1470), and one count of commission of a
felony offense involving a minor while registered as a sex
offender (18 U.S.C. § 2260A).

        Before the court is the motion of defendant to
suppress evidence obtained in violation of the Fourth
Amendment.  He contends that one of his cell phones was
unlawfully seized and searched without a warrant having first
been procured.  At the time he was a probationer under the

supervision of the State of Delaware Office of Probation and
Parole.  The court held an evidentiary hearing on the motion.

   The Government presented as its only witness Edward
Rutkowski, a Senior Probation Officer with the State of
Delaware.  He has supervised sex offenders on probation for the
last three years and was supervising Dahl at the time of the
events in question.

   Dahl was released from confinement and placed on
probation in Delaware on February 4, 2013 after having been
convicted of a sex offense.  Upon his release, he signed
several documents entitled "Conditions of Supervision,"
"Electronic Monitoring Equipment Acknowledgment & Receipt," and
"Sex Offender Conditions of Supervision."  He was placed on
electronic monitoring so that his probation officer knew where
he was at all times.  He was not permitted to leave the State
of Delaware and was subject to a curfew.  No contact with
anyone under 21 years old was allowed, although he was
authorized to have a cell phone with no internet connection.

   His conditions of supervision, among other
restrictions, provided that "you are subject to arrest and to a
search of your living quarters, person or vehicle without a
warrant at any time by a probation/parole officer."  Dahl also
signed a written acknowledgment:  "Using a computer, modem, or
network interfacing device for any purpose which may further

-2-

sexual activity is strictly prohibited.  I understand that any computer, related equipment, and storage devices are subject to seizure by the probation officer if during an examination the probation officer finds any evidence of inappropriate or prohibited use."

Probation Officer Rutkowski began his supervision of Dahl on March 13, 2013, a little over a month after he was placed on probation.  At that time he reviewed with Dahl the various conditions of probation to which Dahl was subject.  In addition, throughout the time of Dahl's probation until he was arrested on November 21, 2013, Rutkowski met with him weekly in the probation office and almost every week in the field.  Up to mid-November, Rutkowski was not aware of any violation of probation by Dahl.

On November 14, 2013, a Delaware State Police officer informed Rutkowski that an undercover law enforcement officer from Delaware County, Pennsylvania, posing as a fifteen-year-old boy, had been communicating with Dahl through e-mails and text messages.  The Delaware State Police officer followed up with a second call to Rutkowski on November 20, 2013.

As a result of these two conversations, it became clear to Rutkowski that Dahl had used the internet to create a posting on the website Craigslist.com seeking sex with a young white male, that he had communicated via e-mail and text

-3-

message with the undercover officer who responded to this posting apparently believing the officer to be a fifteen-year-old boy who lived in Pennsylvania, and that he had sent the undercover officer two photographs, one depicting his face and the other depicting a penis.  Rutkowski also learned from these conversations that Dahl had attempted to persuade the "fifteen-year-old" to travel from Pennsylvania to Delaware for a sexual encounter.  They had agreed to meet at a specific location near Dahl's home in Wilmington, Delaware on the evening of November 21, 2013.

At approximately 5:30 p.m. on November 21, representatives of the Delaware County, Pennsylvania District Attorney's Office, the Delaware State Police, the Delaware Department of Justice, and the Delaware Office of Probation and Parole convened for a briefing on a plan to arrest Dahl later that evening.  Rutkowski was present as was the undercover officer who had posed as a fifteen-year-old boy in his interactions with Dahl.  At that time, Rutkowski viewed the photographs Dahl had sent to the undercover officer as well as the text of the communications between Dahl and the officer.

After the briefing, Rutkowski and two other officers drove in an unmarked car to a building in Wilmington, Delaware where Dahl was attending a sex-offender-treatment meeting.  The officers carried with them a computer which enabled them to

-4-

identify Dahl's whereabouts by tracking the electronic
monitoring device that he wore at all times as a condition of
his probation.  From the car, Rutkowski observed Dahl exit the
meeting and enter his own vehicle, which was approximately 1000
feet away from where the officers were parked.

Dahl drove to the boardinghouse in which he was
residing at the time.  As he pulled into the driveway and
parked, he was approached by members of the Delaware Special
Operations Response Team, who pulled him from his car and
restrained him.  Rutkowski approached Dahl's car immediately
thereafter.  As he did so, one of the apprehending officers
told him that he had seen Dahl reach for an object on the
passenger seat.  On the passenger seat of Dahl's car, Rutkowski
observed two cell phones.  One was a smartphone that Rutkowski
did not know Dahl had.  Rutkowski retrieved these two phones.
He also opened the lid of the car's center console and
retrieved a third cell phone that he located therein.

As soon as Rutkowski possessed the phones, the
undercover officer who had been communicating with Dahl used
his own cell phone to call the number Dahl had provided to him

during their communications.  When he did so, the smartphone
retrieved from Dahl's car rang.[1]

Upon returning to his office, Rutkowski examined the
contents of the three cell phones taken from Dahl's vehicle.
He confirmed that the smartphone had internet access and access
to e-mail.  On the smartphone, Rutkowski observed the
photographs Dahl had sent to the Delaware County, Pennsylvania
undercover officer as well as the text messages exchanged
between Dahl and the undercover officer.  These were the same
items previously supplied by the undercover officer to
Rutkowski.  In the text messages, Dahl and "the fifteen-year-
old" discussed when and where they would meet and what sexual
acts they would perform.  Rutkowski searched the smartphone as
thoroughly as he could.  Although he also searched the other
two phones obtained from Dahl's vehicle, he found nothing
improper on either one.

After searching the three phones, Rutkowski kept them
in his possession until he contacted the Delaware State Police
to request a more detailed search.  This search was conducted
sometime in December 2013.  Upon its completion, the Delaware
State Police provided Rutkowski with a disk containing what
Rutkowski believed to be the entire contents of the three

---

1.   After Dahl was taken into custody, Rutkowski and another
probation officer searched his residence.  No items of concern
were uncovered there.

phones.   The disk included all of the e-mails contained on the
phones, including those relating to the posting Dahl had
created on Craiglist.com seeking sex.

> The Fourth Amendment provides:
>
> > The right of the people to be secure in
> > their persons, houses, papers, and effects,
> > against unreasonable searches and seizures,
> > shall not be violated, and no Warrants shall
> > issue, but upon probable cause, supported by
> > Oath or affirmation, and particularly
> > describing the place to be searched, and the
> > persons or things to be seized.

U.S. Const. amend. IV.

Dahl relies heavily on the Supreme Court's recent
decision in Riley v. California, 134 S. Ct. 2473 (2014) in
support of his motion to suppress evidence as illegally
obtained without a warrant.   See Mapp v. Ohio, 367 U.S. 643,
654 (1961).   In Riley,[2] the police seized the cell phone of
David Riley from his person incident to a lawful arrest and
then searched it without a warrant.   Incriminating evidence was
obtained and used to support his conviction.   The Supreme Court
vacated his conviction on the ground that a warrant was needed
to search his cell phone seized incident to his arrest.   The
Court explained:

---

2.   The Supreme Court actually decided two separate cases in
one opinion.   One was Riley v. California and the other was
United States v. Wurie.   The Supreme Court of California had
upheld the conviction of David Riley while the Court of Appeals
for the First Circuit had suppressed the evidence and vacated
the conviction of Brima Wurie.

> Modern cell phones are not just another
> technological convenience.  With all they
> contain and all they may reveal, they hold
> for many Americans "the privacies of life,"
> ...  The fact that technology now allows an
> individual to carry such information in his
> hand does not make the information any less
> worthy of the protection for which the
> Founders fought.  Our answer to the
> question of what police must do before
> searching a cell phone seized incident to
> an arrest is accordingly simple – get a
> warrant.

134 S. Ct. at 2494-95.

The Government notes that the initial search and seizure of Dahl's cell phone took place approximately seven months before the Supreme Court handed down Riley.  It maintains that the motion to suppress should be denied because the probation officer acted in good faith, that is, in objectively reasonable reliance on then existing judicial precedents in proceeding without a warrant.  See Davis v. United States, 131 S. Ct. 2419, 2429 (2011).  The Government also argues that Dahl's status as a Delaware probationer obviated the need for a warrant.

We begin with the latter argument.  The Government first cites Samson v. California, 547 U.S. 843 (2006).  There a California parolee challenged a warrantless search conducted by a police officer pursuant to a California statute.  That statute provided that every person on parole "shall agree in writing to be subject to a search or seizure by a parole

-8-

officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." Id. at 846.  The Court noted that parole is more akin to imprisonment than is probation since parole "is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence."  Id. at 850.  In contrast to a probationer, the Court pointed out that a parolee has fewer expectations of privacy.  The Court ruled that the California statute[3] was reasonable and that a suspicionless search of a parolee who is subject to many constraints and has a limited right of privacy does not run afoul of the Fourth Amendment.

Delaware is not so generous as California in allowing warrantless searches of probationers.  Delaware law provides:

> Probation and parole officers shall exercise the same powers as constables under the laws of this State and may conduct searches of individuals under probation and parole supervision in accordance with Department procedures while in the performance of the lawful duties of their employment and shall execute lawful orders, warrants and other process as directed to the officer by any court, judge or Board of Parole of this State.

11 Del. C. § 4321(d).

The Delaware Code also states:

---

3.  The Supreme Court commented that despite the broad language of the California statute, "arbitrary, capricious or harassing" searches are prohibited as are searches "for the sole purpose of harassment."  Id. at 856.

> ... any probation officer, when in ...
> probation officer's judgment there has been
> a violation of any condition of probation or
> suspension of sentence, may arrest such
> probationer without a warrant, .... When an
> arrest is made by a probation officer, the
> Department [of Corrections] shall present to
> the detaining authority a written statement
> of the circumstances of violation....

11 Del. C. § 4334(b).

Pursuant to § 4321, the Delaware Department of
Corrections, of which the Office of Probation and Parole is a
part, has adopted the following regulations governing
warrantless searches by its probation officers:

> The [probation] officer and supervisor will
> hold a case conference using the Search
> Checklist as a guideline.  During the case
> conference the supervisor will review the
> "Yes" or "No" responses of the officer to
> the following search decision factors:
>
> (1)   Sufficient reason to believe the
>       offender possesses contraband.
> (2)   Sufficient reason to believe the
>       offender is in violation of
>       probation/parole.
> (3)   Information from a reliable
>       informant, indicating offender
>       possesses contraband or is
>       violating the law.
> (4)   Information from the informant is
>       corroborated.

Probation & Parole Procedure § 7.19.

The Supreme Court of Delaware has held that
warrantless searches of probationers require "reasonable
grounds" or "reasonable suspicion."  Sierra v. State, 958 A.2d

-10-

825, 828 (Del. 2008); <u>Culver v. State</u>, 956 A.2d 5, 11 (Del. 2008).

        If <u>Samson</u> is not applicable here because California and Delaware law differ and <u>Samson</u> concerned a parolee and this case concerns a probationer, the Government relies on <u>United States v. Knights</u>, 534 U.S. 112 (2001).  There the Supreme Court faced the question whether a probation officer needed a warrant to search the probationer's residence when the search was authorized pursuant to a condition of probation imposed by the sentencing court.  The Supreme Court ruled that no warrant was necessary since the probation officer under the totality of the circumstances had reasonable suspicion of criminal activity.  In reaching this result, the Court balanced the individual's privacy with the need to promote legitimate governmental interests.  The Court observed that a probationer has a diminished expectation of privacy while the state has an interest in the rehabilitation of its probationers and may properly assume that a probationer "is more likely than the ordinary citizen to violate the law."  <u>Id.</u> at 120 (quoting <u>Griffin v. Wisconsin</u>, 483 U.S. 868, 880 (1987)).  The Supreme Court explained:

                We hold that the balance of these
                considerations requires no more than
                reasonable suspicion to conduct a search of
                this probationer's house.  The degree of
                individualized suspicion required of a

> search is a determination of when there is
> a sufficiently high probability that
> criminal conduct is occurring to make the
> intrusion on the individual's privacy
> interest reasonable....  Although the
> Fourth Amendment ordinarily requires the
> degree of probability embodied in the term
> "probable cause," a lesser degree satisfies
> the Constitution when the balance of
> governmental and private interests makes
> such a standard reasonable.

534 U.S. at 121.  The Court further emphasized:

> When an officer has reasonable suspicion
> that a probationer subject to a search
> condition is engaged in criminal activity,
> there is enough likelihood that criminal
> conduct is occurring that an intrusion on
> the probationer's significantly diminished
> privacy interests is reasonable.

Id.

        In this case, at the time of the seizure and search

in issue, defendant was under the supervision of the State of

Delaware Office of Probation and Parole as a probationer for

sex crimes.  It was Rutkowski, his probation officer, who

seized and later searched his cell phone pursuant to a

condition of probation imposed by the Delaware state court.

Delaware law permits a warrantless search only if reasonable

grounds or reasonable suspicions existed.  Based on the

evidence presented at the hearing before this court, the

probation officer had a reasonable suspicion that defendant was

engaging in criminal conduct of a sexual nature at the time of

the seizure.

Rutkowski had reliable information from the Delaware
State Police as well as the undercover officer from Delaware
County, Pennsylvania, that Dahl was using a cell phone to
solicit sex from what he believed to be a fifteen-year-old boy.
Rutkowski had also seen before the arrest the pictures Dahl had
sent to the undercover officer as well as the actual text
messages exchanged between Dahl and the undercover officer.
Rutkowski followed all the administrative requirements of
Delaware law in seizing and searching Dahl's cell phone.

Dahl argues that Riley supersedes Knights to the
extent that the seizure and search involves a cell phone.  We
are not persuaded.  The Supreme Court in Riley recognized that
there were "case-specific exceptions" to its holding that a
warrant was generally necessary to search a cell phone incident
to an arrest.  The Court specifically referenced the continued
viability of a warrantless search of a cell phone incident to a
lawful arrest if exigent circumstances are established.

We see no reason why the well-established exception
outlined in Knights would not also survive under Riley.  Under
the Knights exception, like the exigent circumstances
exception, the court must determine in each instance whether a
warrantless search was justified.  The Knights exception, we
reiterate, requires a court to determine if the search is tied
to a reasonable suspicion that criminal activity of a

-13-

probationer has been taking place.  In contrast, a warrantless

search of a person incident to a lawful arrest does not

necessitate in each case a specific finding with respect to the

probability of the presence of weapons or incriminating

evidence.  The warrantless search there is allowed as a matter

of course with no justification needed once the arrest is made.

Permitting the contents of a cell phone of a probationer, who

has limited expectations of privacy, to be searched based on

reasonable suspicion and without a warrant, just like a

warrantless search of a cell phone based on exigent

circumstances, does not open the floodgates to massive

invasions of privacy without judicial oversight.  See Riley,

134 S. Ct. at 2494.  Thus, the concern of the Supreme Court in

Riley does not exist here.

     Finally, Dahl cites Arizona v. Gant, 556 U.S. 332

(2009) in support of his motion to suppress the evidence

obtained as a result of Rutkowski's warrantless search of his

cell phone.  In Riley the cell phone was seized from the

arrestee's person.  Here, Dahl's cell phone was seized from the

front seat of his vehicle.  Gant held that "the police may

search a vehicle incident to a recent occupant's arrest only if

the arrestee is within reaching distance of the passenger

compartment at the time of the search or it is reasonable to

believe the vehicle contains evidence of the offense of

-14-

arrest." Id. at 351.  Otherwise, a warrant must be obtained
unless "another exception to the warrant applies." Id.  This
decision is not helpful to Dahl.  First, the probation officer
had reason to believe Dahl's vehicle contained evidence of the
arrest, that is, a cell phone the contents of which would
likely show that Dahl was attempting to entice a fifteen-year-
old boy to engage in sexual acts with him.  Second, the
probationer's exception, as outlined in Knights, applies.

     In summary, the requirements of Knights have been
satisfied and neither Riley nor Gant undermines that Supreme
Court decision.  The probation officer, as noted above, had
reasonable suspicion under all the circumstances that the
defendant was using a cell phone to facilitate illegal sexual
conduct with a minor.  The search of his cell phone without a
warrant did not violate the Fourth Amendment or for that matter
Delaware law.  As a result, we do not have to reach the
Government's argument that the probation officer acted in good
faith, that is, in an objectively reasonable manner in making
the warrantless search under then established judicial
precedents.

     The motion of the defendant William S. Dahl to
suppress evidence obtained from his cell phone seized from his
vehicle on November 21, 2013 will be denied.